IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Amanda Boozer, ) | C/A No.: 6:20-cv-03285-DCC-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Kilolo Kijakazi, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant.[1] ) | |
| _____ ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and 28 U.S.C. § 636(b)(1)(B).[2] The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits ("DIB") on June 30, 2016[3], alleging that she became unable to work on January 31, 2011 (Tr. 160–63). The application was denied initially (Tr. 70–78) and on reconsideration (Tr. 80–89) by the Social Security Administration. On April 24, 2017, the plaintiff requested a hearing (Tr. 104–06). On November 20, 2018, an administrative hearing was held at which the plaintiff,

---

[1] Recently, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), she is automatically substituted for defendant Andrew Saul, who was the Commissioner of Social Security when this action was filed.

[2] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[3] The ALJ's decision records the application date as June 29, 2016 (Tr. 22).

represented by counsel, appeared and testified from Greenwood, South Carolina, and Janette Clifford, an impartial vocational expert, appeared and testified before the ALJ in Mauldin, South Carolina (Tr. 43–69). On February 21, 2019, the ALJ considered the case *de novo* and found that the plaintiff was not under a disability as defined in the Social Security Act, as amended (Tr. 22–41). The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on August 11, 2020 (Tr. 1–3). The plaintiff then filed this action for judicial review (doc. 1).

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)    The claimant last met the insured status requirements of the Social Security Act on March 31, 2016.

(2)    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 31, 2011, through her date last insured of March 31, 2016 (20 C.F.R. § 404.1571 *et seq.*).

(3)    Through the date last insured, the claimant had the following severe impairments:  multiple sclerosis, migraines, obesity, depression, and anxiety (20 C.F.R. § 404.1520(c)).

(4)    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

(5)    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except she could never climb ladders, ropes, or scaffolds. She could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She could frequently handle and finger with her left, non-dominant upper extremity. She could have no exposure to workplace hazards. She was limited to simple, routine tasks performed for two hours at a time.

2

(6)     Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).

(7)     The claimant was born on March 16, 1978, and was 38 years old, which is defined as a younger individual age 18-44, on the date last insured (20 C.F.R. § 404.1563).

(8)     The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1569 and 404.1569a).

(11)     The claimant was not under a disability, as defined in the Social Security Act, at any time from January 31, 2011, the alleged onset date, through March 31, 2016, the date last insured (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

Under 42 U.S.C. § 423(d)(1)(A), (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

3

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that meets or medically equals an impairment contained in the Listing of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, (4) can perform his past relevant work, and (5) can perform other work.  *Id.* § 404.1520.  If an individual is found disabled or not disabled at any step, further inquiry is unnecessary.  *Id.* § 404.1520(a)(4).

A claimant must make a *prima facie* case of disability by showing he is unable to return to his past relevant work because of his impairments.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  Once an individual has established a *prima facie* case of disability, the burden shifts to the Commissioner to establish that the plaintiff can perform alternative work and that such work exists in the national economy.  *Id.* (citing 42 U.S.C. § 423(d)(2)(A)).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  *Id.* at 191–92.

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Id.*  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  *Id*.  Consequently, even if the court disagrees with Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

4

## ANALYSIS

The plaintiff argues (1) that the ALJ erred by failing to properly assess medical source opinions by treating providers (doc. 14 at 27–34), and (2) that the Appeals Council erred in its consideration of new and material evidence (*id*. at 35–39). The Commissioner asserts that the ALJ's decision is supported by substantial evidence and should be affirmed (doc. 15 at 9–14). For the reasons set forth in more detail below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

### *Medical Source Statements*

As noted, the plaintiff argues that the ALJ failed to appropriately evaluate opinion evidence, including opinions by the plaintiff's treating physician William M. Dixon, III, M.D., FAAFP (doc. 14 at 27–34).[4] The regulations require that all medical opinions in a case be considered. 20 C.F.R. § 404.1527(b). The regulations further direct ALJs to accord controlling weight to a treating physician's opinion that is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and that is not inconsistent with the other substantial evidence of record. *Id.* § 404.1527(c)(2). If a treating physician's opinion is not given controlling weight, the ALJ must proceed to weigh the treating physician's opinion, along with all the other medical opinions of record, based upon the following non-exclusive list of factors: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with which the physician supports his opinion; (5) the consistency of the opinion; and (6) whether the physician is a specialist in the area

---

[4] The plaintiff also argues that the ALJ's decision erred in its consideration of the opinion of Juliette Saad, M.D.; however, because the undersigned finds that the ALJ's error with respect to Dr. Dixon's opinions is sufficient to warrant remand of this action, this report and recommendation will only address the analysis of Dr. Dixon's opinions.

in which he is rendering an opinion. *Id.* § 404.1527(c)(1)-(5)[5]; *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005).  However, "[w]hile an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 385 (4th Cir. 2021) (emphasis in original).

Recently, the Fourth Circuit Court of Appeals reiterated the treating physician rule, explaining that it "requires that ALJs give 'controlling weight' to a treating physician's opinion on the nature and severity of the [plaintiff's] impairment if that opinion is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with the other substantial evidence' in the record." *Arakas v. Comm'r*, *Soc. Sec. Admin.*, 983 F.3d 83, 106 (4th Cir. 2020).  The court went on to note that a treating physician opinion "*must* be given controlling weight *unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is *contradicted* by the other substantial evidence in the record." *Id*. at 107 (emphasis in original) (citations omitted).

The record contains two letters by Dr. Dixon, dated September 16, 2016, and August 21, 2018 (Tr. 832, 2524).  In both medical source statements, Dr. Dixon noted that he had treated the plaintiff since 2010.  In the first letter, Dr. Dixon opined that the plaintiff's multiple sclerosis ("MS"), intermittent migraines, and significant medical issues would prevent the plaintiff from maintaining gainful employment (Tr. 832).  The second letter

---

[5] These regulations apply for applications filed before March 27, 2017. *See* 20 C.F.R. § 404.1527.  For applications filed on or after March 27, 2017, a new regulatory framework for considering and articulating the value of medical opinions has been established. *See id.* § 404.1520c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017).  Here, the plaintiff's DIB application was filed before March 27, 2017; thus, the opinions have been analyzed under the old rules.

6

specifically noted that the plaintiff's MS caused her to have difficulty walking, loss of strength and muscle atrophy "on her L,"[6] difficulty with concentration, intermittent diarrhea, and numbness and tingling in her face. Dr. Dixon noted that although the plaintiff had tried to work in the past, she had multiple absences from work and struggled at work because of "mental fog." Based upon these observations, Dr. Dixon opined that the plaintiff would not be able to maintain meaningful employment as well as that the plaintiff's condition would likely only worsen in the future (Tr. 2524).

The ALJ considered Dr. Dixon's opinions and assigned them limited weight, noting:

> Limited weight is given to th[e 2016] opinion because it was given after the date last insured. Further, the issue of disability is reserved to the Commissioner, and this opinion does not give any specific function-by-function work limitations. Moreover, treatment notes during the period at issue indicated that the [plaintiff] consistently reported good pain relief with methadone and Lyrica (Ex. 7F; 9F; 24F). The notes also stated that the [plaintiff] reported that Botox injections had helped her considerably and had improved her range of motion (Ex. 9F). Additionally, treatment notes indicated that the [plaintiff] was able to sit upright in a chair and that her gait was normal (Ex. 4F; 7F; 9F; 24F). Finally, Dr. Dixon's treatment notes from September 2016, indicated that the [plaintiff] reported that her attorney would not take her case unless she provided a letter from her primary care physician indicating that she would not be able to be gainfully employed in the state of South Carolina, and then a few days later, Dr. Dixon issued this opinion (Ex. 7F/29; 8F/1).

> Limited weight is given to another opinion from Dr. Dixon. In August 2018, Dr. Dixon stated that the [plaintiff] is not able to hold meaningful employment (Ex. 28F/1). Limited weight is given to this opinion because it was given after the date last insured. Further, the issue of disability is reserved for the Commissioner and this opinion does not give any specific function-by-function work limitations. Moreover, treatment notes during the period at issue indicated that the [plaintiff] consistently reported good pain relief with methadone and Lyrica (Ex. 7F; 9F; 24F). The notes also stated that the [plaintiff] reported that Botox injections had helped her

---

[6] Based upon the plaintiff's medical records, it appears that Dr. Dixon is referencing the plaintiff's left side (*see* Tr. 1429 (Dr. Saad noting that the plaintiff's muscle and atrophy were worse on the left side)).

considerably and had improved her range of motion (Ex. 9F). Finally, treatment notes indicated that the [plaintiff] was able to sit upright in a chair and that her gait was normal (Ex. 4F; 7F; 9F; 24F).

(Tr. 30–31).

The plaintiff argues that the ALJ violated the treating physician rule because she did not evaluate Dr. Dixon's opinion in accordance with the appropriate factors. The undersigned agrees. For example, it is not apparent from the "ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give [Dr. Dixon's] opinion[s]." *Dowling*, 986 F.3d at 385. Beyond a blanket reference to entire exhibits, which number more than one thousand pages, there is no indication that the ALJ considered the majority of the factors under 20 C.F.R. § 404.1527(c) (*see* Tr. 30–31). Indeed, two factors that were omitted, relating to the length of the treatment relationship and frequency of examinations and the nature and extent of the treatment relationship, appear to favor the plaintiff, as Dr. Dixon has consistently treated the plaintiff since January 2010 (meaning that he was the plaintiff's family physician during the entirety of the relevant time). 20 C.F.R. § 404.1527(c).

Nevertheless, the Commissioner argues that the ALJ appropriately discounted Dr. Dixon's opinions because Dr Dixon's opinion that the plaintiff could not work was an issue reserved to the Commissioner (doc. 15 at 9 (citing 20 C.F.R. § 404.1527(d)). However, as recognized by the Fourth Circuit in *Arakas*, "ALJs may not disregard such opinions when offered by a treating physician." *Arakas*, 983 F.3d at 109 (citing *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (holding that the "ALJ improperly refused to credit [the treating physician's] medical opinion that his long term patient . . . was totally disabled)). The court in *Arakas* went on to note that this finding was consistent with cases from the Eighth and Ninth Circuits. *Id*. (citing *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (finding that the ALJ erred by disregarding the treating physician's opinion that the

8

claimant's "combination of mental and medical problems makes . . . sustained full time competitive employment unlikely"); *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (concluding that the ALJ's rejection of the treating physician's "four-hour [work] day restriction" was "wrong" because "medical opinions on how much work a claimant can do are not only allowed, but encouraged"). Here, as in *Hill*, Dr. Dixon's opinions were "not a conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1), but instead an assessment, based on objective medical evidence, of [the plaintiff's] *likelihood* of being able to sustain full time employment given the many medical and mental impairments" the plaintiff faces. *Hill*, 698 F.3d at 1160 (emphasis in original). As such, the ALJ erred in rejecting Dr. Dixon's opinions on this basis.

       Nevertheless, the Commissioner asserts that the ALJ appropriately rejected Dr. Dixon's opinions because they were not supported by his records or consistent with other record evidence (doc. 15 at 9–13). The court disagrees. As an initial matter, it appears that the ALJ conflated the supportability and consistency analysis – addressing the entire record without distinction between Dr. Dixon's records and those belonging to other providers (Tr. 30–31). For example, the ALJ provided limited weight to Dr. Dixon's opinions in part based upon reports by the plaintiff that she achieved good relief with methadone and Lyrica (Tr. 30–31). However, the ALJ referenced more than 1300 pages of medical records in "support" of that assertion – without recognizing that a large portion of the records postdated the date last insured or that the plaintiff's reports regarding the effectiveness of methadone and Lyrica often included limiting language. For example, a review of the records cited by the ALJ reveals that although the plaintiff reported in 2014 that she was able to do most things on the methadone and Lyrica and that they provided her with comfort, she also reported the medications as improving her comfort "some," and over time reported that the methadone was providing less relief and that pain was only "somewhat responsive" to the medication (Tr. 389, 758, 1017, 1240, 1278). Likewise, while some 2015

treatment notes indicated that the plaintiff had good pain relief with methadone and Lyrica or that the medications provided comfort, the plaintiff reported ongoing muscle spasms (Tr. 391, 393, 1112, 1150, 2018, 2031, 2045, 2093).  Indeed, while the plaintiff reported good pain relief in 2016, her treatment notes dated March 29, 2016, specifically noted that although her pain medications were effective she was still experiencing at least one episode per week where she was unable to get out of bed secondary to MS symptoms (Tr. 1969, 1993). These records, which reference ongoing difficulty with pain secondary to MS, appear consistent with Dr. Dixon's opinions regarding the plaintiff's ability to sustain work; however, the ALJ included just a passing reference to the records with no acknowledgment of the plaintiff's ongoing difficulty in functioning despite reporting some relief with methadone and Lyrica.

The same analysis is fatal to the ALJ's passing reference to Botox injections and notations that the plaintiff had a normal gait and could sit upright in a chair.  First, Exhibit 4F, referenced by the ALJ, consists of a comprehensive eye examination containing none of the conclusions referenced by the ALJ (Tr. 337–47).  Moreover, although the plaintiff reported a few times during the relevant period that Botox did provide relief, she also reported that she had trouble finding a provider to do her Botox injections, as well as that she stopped seeking Botox injections after suffering adverse affects (*compare* Tr. 391, 1207, 1278, 1305, 2071 (good relief with Botox in the past) *with* Tr. 450 (noting an adverse reaction to Botox in 2014)).  Additionally, although the plaintiff is noted as having a normal gait several times in the record (Tr. 298–99, 380, 392, 595, 606, 614, 625, 696, 762, 960, 977, 1412, 1639, 2130–31, 2167, 2543), she is also noted during the relevant period as having an antalgic gait, a slow gait, and as being stiff when she walked with an abnormal tandem walk (Tr. 301, 867, 890, 940, 1860, 1943, 2436, 2491, 2493, 2496).  The ALJ did not include a discussion of these abnormal examination findings; instead, it appears that the

10

ALJ relied upon certain benign treatment notes in the voluminous record evidence in discounting Dr. Dixon's opinions.

As such, although the ALJ retains the authority to weigh medical opinions – and is not required to discuss every factor set forth in the regulations (so long as the decision reflects meaningful consideration of the factors) – it is legally insufficient for the ALJ's decision to overlook portions of an opinion and record evidence in partially disregarding medical opinions provided by treating providers, such as Dr. Dixon. "A necessary predicate to engaging in substantial evidence review is a record" that adequately explains the ALJ's findings and reasoning. *Dowell v. Colvin*, C/A No. 1:12-cv-1006, 2015 WL 1524767, at *4 (M.D.N.C. Apr. 2, 2015) (requiring that the ALJ "build a logical bridge between the evidence and his conclusions") (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). Accordingly, this case should be remanded so that the ALJ may properly weigh the opinions of Dr. Dixon under the applicable standards and explain the reasons for the weight given to his opinions.

### *Remaining Allegations of Error*

In light of the court's recommendation that this matter be remanded for further consideration as discussed above, the court need not specifically address the plaintiff's remaining allegations of error as the ALJ will be able to reconsider and re-evaluate the evidence as part of the reconsideration of this claim.[7] *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763–64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect as it is vacated and the new hearing is conducted *de novo*); *see Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). As such, on remand, the ALJ is to also take into consideration the plaintiff's remaining allegations of error.

---

[7] This includes medical source statements submitted to the appeals council after the ALJ's decision (*see* Tr. 7–15).

## **CONCLUSION AND RECOMMENDATION**

As such, based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

**IT IS SO RECOMMENDED**.

s/Kevin F. McDonald
United States Magistrate Judge

September 24, 2021
Greenville, South Carolina

***The attention of the parties is directed to the important notice on the following page.***

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street Room 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).